## PHILIP A. RYAN LUMBER CO. et al. v. CONN. (No. 1793.)

Court of Civil Appeals of Texas. Beaumont. Aug. 13, 1929.

Rehearing Denied Oct. 2, 1929.

Tom F. Coleman, of Lufkin, and Fred L. Williams, of Houston, for appellants.

Mantooth & Denman, of Lufkin, for appellee.

HIGHTOWER, C. J. This suit was brought by the appellee, E. J. Conn, against Philip A. Ryan as an individual and the Philip A. Ryan Lumber Company, a corporation, to recover a brokerage commission alleged by appellee to be due him for his services in behalf of appellants in effecting a sale of their sawmill plant located near the city of Lufkin in Angelina county. Appellee alleged:

"That on and prior to the 9th day of April, A. D. 1926, plaintiff was a real estate agent engaged in the business of procuring purchasers and making sales of land and other property for others, and on said date the defendants represented to the plaintiff that they were the owners in fee simple in their own right of that certain real estate and personal property situated in Angelina County, Texas, hereinafter more particularly described. * * *

"That being desirous of selling said property said defendants on the day and year aforesaid placed and listed said property with the plaintiff for sale, at the price and upon the following terms and conditions, to-wit:

" 'Mr. E. J. Conn, Lufkin, Texas.

" 'Dear Sir: Per your request, we are handing you herewith a general outline of what we have here at our plant, as you stated you had a customer for same.

" 'We have [here follows a list of the property].

" 'We have city water and lights, also water connections with the cotton belt railroad water main.

" 'Our plant is first class and ready to steam up and run.

" 'For this entire outfit we want $150,000.00.

" 'Everything is in first class shape and $150,000.00 is less than 70% of the replacement value.

" 'Regarding commission we would be willing to pay a commission of $3,000.00 if actual sale is made and papers drawn and sale consummated, but no exclusive sales rights are given.' "

Appellees then further alleged: That, by virtue of the contract (meaning the letter above quoted), it was agreed and understood by and between plaintiff and defendants that plaintiff should obtain a purchaser for the defendants of their mill plant, and that for his services in doing so plaintiff was to be paid by defendants the sum of $3,000 to be paid the plaintiff at the time of consummation of the sale. That, in pursuance of his part of the contract, the plaintiff did find and introduce to defendants a purchaser for their mill plant who was able, willing, and ready to buy the property, but was not willing to pay therefor $150,000, as desired by defendants. That the purchaser found and introduced by plaintiff to defendants was the Boynton Lumber Company, a corporation engaged in the sawmilling business near the city of Lufkin, and that through the efforts of plaintiff the Boynton Lumber Company had become interested in the mill plant of defendants, and were anxious to buy the same, but that the Boynton Lumber Company and defendants were not able to agree at first upon the price for the mill plant, and that, after the Boynton Lumber Company had been introduced by plaintiff to defendant, and had become interested through his efforts in the purchase of the mill plant, and while the plaintiff was still negotiating with the Boynton Lumber Company for the sale of the mill plant, and using his best efforts to bring about the purchase of the mill plant by that corporation, the defendants took the matter of the sale and purchase of the mill plant into their own hands, and finally entered into an agreement with the Boynton Lumber Company to sell their mill plant to the Boynton Lumber Company for the price of $65,000, and that later the defendants did in fact sell and convey the mill plant to the Boynton Lumber Company for the sum of $65,000. That under the terms of the contract between plaintiff and defendants plaintiff was entitled to his commission of $3,000 as soon as defendants sold their mill plant to the Boynton Lumber Company, but that his demand for the commission had been denied and refused.

Plaintiff further alleged in the alternative that, if he was mistaken in his claim that he was entitled to a commission of $3,000 under the terms of the contract between him and defendants, he was nevertheless entitled to recover on quantum meruit, and that the value of his services to defendant in connection with the sale of the mill plant to the Boynton Lumber Company was $3,000, and prayed in the alternative for that amount.

Defendants answered by general demurrer and general denial, and specially denied that they had ever entered into any contract with plaintiff authorizing him, as their agent, to sell their mill plant, as alleged by him, but admitting that they did write to plaintiff the letter dated April 9, 1926, hereinabove copied and made a part of the plaintiff's petition.

Defendants further specially denied that plaintiff ever procured a purchaser of their mill plant who was willing, able, and ready to buy the same, and specially denied that plaintiff was instrumental in any way in effecting a sale of their mill plant to the Boynton Lumber Company or that his services in that connection were of any value whatever to defendants in the sale of their mill plant to the Boynton Lumber Company.

Defendants further specially averred in substance that, if they ever entered into a contract with plaintiff authorizing him, as their agent, to effect a sale of their mill plant or to procure a purchaser of same, as alleged by him, he failed to do either, and that, after so failing, the plaintiff abandoned further efforts to effect a sale of their mill plant or to procure a purchaser of same long before defendants sold the mill plant to the Boynton Lumber Company and before they entered into negotiations with the Boynton Lumber Company for the sale and purchase of the mill plant, and that therefore the plaintiff was not entitled to any commission under the terms of the contract between themselves and plaintiff.

Defendants further specially averred in substance that whatever authority, if any, that had been given plaintiff by defendants to act as their agent in effecting a sale of their mill plant or in procuring a purchaser of same had been revoked by defendants long before they sold their mill plant to the Boynton Lumber Company, and in substance that plaintiff acquiesced in such revocation, and that therefore plaintiff was not entitled to recover anything as against defendants.

Defendants further specially averred that the sale of their mill plant to the Boynton Lumber Company was not the result of any efforts on the part of plaintiff in that connection, but that the sale of the mill plant to the Boynton Lumber Company was effected solely through the efforts of one W. C. Trout, who had become interested in the purchase of the mill plant by the Boynton Lumber Company, and that it was understood and agreed between defendants and the said Trout that he was to receive no commission whatever from defendants for his efforts in effecting a sale of their mill plant, and that the price that was to be paid and was paid by the Boynton Lumber Company to defendants of $65,000 was to be net to defendants, and that no one was to be entitled to any commission on such sale. We think this states substantially and fully enough the issues made by the pleadings in this case, and, since there is no question of pleading, as such, before us, we pretermit any further statement of the case.

The case was tried with a jury, and was submitted upon special issues, all of which were answered by the jury in favor of the plaintiff, and judgment was rendered accordingly in favor of the plaintiff against defendants jointly for the sum of $3,000, with interest on that amount at the rate of 6 per cent. per annum from the date of the judgment.

The special issues submitted in the court's charge for the jury's consideration, with the answer to each, were as follows:

"Special Issue No. 1: Did the defendants Philip A. Ryan Lumber Company and Philip A. Ryan list for sale with plaintiff, E. J. Conn, their mill property?"

Answer: "Yes."

"Special Issue No. 2: Did the defendant Philip A. Ryan Lumber Company and Philip A. Ryan agree to pay the plaintiff, E. J. Conn, a commission on the sale of the mill plant property?"

Answer: "Yes."

"Special Issue No. 3: Did the plaintiff, E. J. Conn, interest any person in the purchase of said mill plant property, while the contract was in force?"

Answer: "Yes."

"Special Issue No. 4: If you have answered Special Issue No. 3 'yes,' then state the name of the persons, if any, whom plaintiff interested in the purchase of said mill plant property."

Answer: "Boynton Lumber Company."

"Special Issue No. 5: If you have answered Special Issue No. 4 that plaintiff interested Boynton Lumber Company in the purchase of said mill plant property, then you will answer the following question: '

"Was the Boynton Lumber Company able, ready and willing to purchase said mill plant property upon terms satisfactory to the defendants?"

Answer: "Yes."

"Special Issue No. 6: Did the defendants Philip A. Ryan Lumber Company and Philip A. Ryan make a sale of said mill plant property to Boynton Lumber Company, upon terms satisfactory to defendants?"

Answer: "Yes."

"Special Issue No. 7: Was the sale of said mill plant property made by defendants to Boynton Lumber Company before negotiations of E. J. Conn were concluded?"

Answer: "Yes."

Before the above special issues were submitted to the jury, counsel for defendants duly presented to the trial court objections to each and all of them, which were overruled, and in due time counsel for defendants prepared and requested the trial court to submit for the jury's consideration the following special issues:

"Issue No. 1: Did anyone for the Philip A. Ryan Lumber Company ever agree to pay the plaintiff, Conn, a commission of $3,000.00 for the sale of the mill plant of the Philip A. Ryan Lumber Company, on any terms other than as set out in the letters from the Philip A. Ryan Lumber Company to E. J. Conn dated April 9, 1926, and April 12, 1926, which were read in evidence before you?"

"Issue No. 2: In the event that you have answered the foregoing question in the affirmative, then you will answer the following questions, which questions need not be answered by you if you have answered the foregoing question in the negative:

"On what sales price of the mill plant did the Philip A. Ryan Lumber Company agree to pay plaintiff, Conn, a commission for a sale of the mill plant?"

"Issue No. 3: Did the plaintiff ever find a purchaser who was ready, able and willing to purchase the mill plant for the price found by you in answer to Special Issue No. 2?"

"Issue No. 4: At the time that the sale of the mill plant was made by the Philip A. Ryan Lumber Company to the Boynton Lumber Company, was the Philip A. Ryan Lumber Company justified in believing that the plaintiff, Conn, had abandoned his claim for a commission?"

"Issue No. 5: Would the Philip A. Ryan Lumber Company have sold the property that it did sell to the Boynton Lumber Company for the price that the evidence shows that it did sell to it for if its officers had believed that it would be responsible to anybody for a commission?"

"Issue No. 6: Did the plaintiff, E. J. Conn, ever obtain from the Boynton Lumber Company an offer to purchase the mill plant of the Philip A. Ryan Lumber Company on terms which the Philip A. Ryan Lumber Company was willing to sell it for and upon terms upon which Philip A. Ryan Lumber Company authorized Conn to sell for?"

"Issue No. 7: Was the sale that was made by the Philip A. Ryan Lumber Company to the Boynton Lumber Company the result of the efforts of plaintiff, E. J. Conn, or the result of the efforts of W. C. Trout?"

Counsel for defendants also requested the trial judge to give to the jury a special charge, which counsel contend ought to have been given to guide the jury in their answer to their requested issue No. 4. The special charge requested was as follows:

"Gentlemen of the Jury: You are instructed, as a part of the law of this case, that if prior to the time that the Philip A. Ryan Lumber Company made the sale to the Boynton Lumber Company of its mill property, as shown by the conveyance introduced in evidence, Philip A. Ryan Lumber Company, or Philip A. Ryan, were led to believe by the plaintiff, Conn, that he had abandoned his claim for a commission on a sale of such property, and after the trade was closed at a time when the Philip A. Ryan Lumber Company and Philip A. Ryan believed, and in good faith believed from the evidence upon

which a reasonably prudent man would found such belief, that the said Conn would not claim any commission on such sale, then you will answer Special Requested Issue No. 4 of the defendant in the affirmative."

Each and all of the above-stated special issues requested by defendants, as well as the special charge just quoted, were refused by the trial court, and that action of the court is properly assigned as error here.

■ Before going into detail in disposing of the numerous contentions advanced by appellants for reversal of this judgment, it will be well perhaps to dispose of the main and, as counsel for appellants stated in oral argument at this bar, the controlling question in this case. That question is the proper construction of the letter written by appellants to appellee dated April 9, 1926, and which we have copied above, and there is no necessity for again repeating it here. Counsel for appellants earnestly contend that the proper construction of this letter is that the appellee, Conn, was not entitled to have any compensation as a commission for his services in connection with the sale of the mill plant of appellants, unless he found a purchaser of the plant who was able, willing, and ready to purchase the same at the price of $150,000, or at least at the price of 70 per cent. of that amount, and that, since the undisputed evidence in the case showed that appellee never found a purchaser of the mill plant who was able, willing, and ready to pay for the same $150,000, or at least 70 per cent. of that amount, he was not entitled to recover anything in this case, and that therefore the jury should have been peremptorily instructed, as requested by counsel for appellants, to return a verdict in favor of appellants.

We cannot agree with learned counsel for appellants that the letter referred to is susceptible of the construction contended for by them. It is true that it is stated in the letter that appellants "want" $150,000 for their mill property, but it is not stated expressly nor by implication that appellants would not sell their mill property for less than $150,000, nor is it stated expressly or by implication that the appellee, Conn, was to have no commission, unless he sold the mill plant for $150,000 or any other stated amount. On the contrary, relative to the commission to be paid for appellee's services, the letter does expressly state the following: "Regarding commission we would be willing to pay a commission of $3,000.00 if actual sale is made and papers drawn and sale consummated, but no exclusive sales rights are given."

Now counsel for appellee contends that the proper construction of this letter is that, if Conn should find and introduce to the Philip A. Ryan Lumber Company a purchaser of its mill plant who was able, willing, and ready to purchase the same at a price and upon terms satisfactory to the Philip A. Ryan Lumber Company, and that company should in fact sell the mill plant to such purchaser at a price and upon terms satisfactory to it, while Conn's contract as agent or broker with the Philip A. Ryan Lumber Company was still in force, that is to say, while Conn was still negotiating with the purchaser for the sale and purchase of the property, then Conn was entitled to recover a commission of $3,000 as stated in the letter, regardless of the price at which appellants sold the mill plant to the purchaser found and introduced by Conn. After careful consideration of the respective contentions as to the proper construction of the letter referred to, we have concluded that counsel for appellee are correct in their construction, and therefore overrule the contention of appellants that they were entitled to have the verdict peremptorily instructed in their favor. We might add, before leaving this point, that counsel for appellants have not cited in their brief any authority that sustains their construction of the letter referred to, and, indeed, they cite no authority in that connection at all.

■ As we have hereinbefore stated, counsel for appellants duly objected to each and all of the special issues submitted in the court's charge, but we did not state in detail what these objections were. Objection No. 2 to the issues submitted by the court, as we have already shown them, was as follows:

"The defendants except to the charge of the court as given, because it does not cover their defenses of estoppel by plaintiff to claim a commission, abandonment by him to claim a commission, and his acquiescence in the sale as consummated, and the defense of defendants that they acted in good faith upon proper grounds and belief that plaintiff would not claim a commission on the sale as made, and does not cover the question as to what was the agreement between plaintiff and defendants as to what authority the plaintiff had as to price and terms of the sale, and more especially on the point as to whether the only authority given by defendants to plaintiff was as set out in the letters of April 9 and April 12, 1926."

We dispose of these objections as follows: In the first place, as we construe the answer of appellants in this case, there was no plea of estoppel interposed by appellants. They did plead in substance that appellee failed to find, a purchaser for their mill plant, and that after such failure appellants "considered" that appellee had given up all hopes of finding a purchaser of their mill plant, and that they thereafter were approached by one W. C. Trout, whom they authorized to effect a sale of their mill plant to the Boynton Lumber Company without commission to him, and that therefore they were due appellee nothing in the way of a commission. We find no facts pleaded by appellants that would constitute an estoppel on appellee's part to claim a commission, and for that reason alone the court should not have submitted

any issue of estoppel, as now claimed by appellants. In the next place, if appellants had affirmatively interposed the defense of estoppel, they did not, by any properly framed issue, request its submission to the jury, and for that reason they must be held to have waived any such defense.

■ As to abandonment of his claim to a commission by the plaintiff, it is true that appellants did affirmatively interpose that defense, but we do not find in this record any properly framed issue that was requested by appellants to be submitted for the jury's determination, and therefore that issue, if raised by the evidence, was waived. We make the same disposition as to the claimed acquiescence by appellee in the sale of the mill property as consummated. With reference to the contention that the court's charge did not cover the question as to what was the agreement between plaintiff and defendants as to what authority the plaintiff had as to price and terms of the sale, it is our opinion that this was a question of law for the determination of the court itself, and not a question of fact for the jury.

■ Appellants objected to special issue No. 1 submitted by the court, as we have copied it hereinbefore, because an answer to that question by the jury would be immaterial and furnish no basis for any judgment to be rendered. We overrule this contention. The letter itself above referred to from the Philip A. Ryan Lumber Company to the appellee, Conn, is conclusive evidence that appellants did list their mill plant property with appellee for sale, and that was one of the issues in the case. It is true it was not a disputed issue, and the trial court might have properly assumed the affirmative of that issue without submitting it to the jury, but appellants have no just complaint in that connection.

■ Counsel for appellants objected to special issue No. 2 submitted for the jury's consideration, for the reason, mainly, that an answer to that question would be immaterial as a basis for any judgment in the case and for other reasons which we do not sustain. As we have already shown, special issue No. 2 merely asked the jury to find whether or not appellants agreed to pay appellee a commission on the sale of their mill plant. The letter that we have referred to above shows conclusively that appellants did so agree. Therefore this issue was not only a material one, but, being undisputed in appellee's favor, it might have been properly assumed as established by the evidence, and appellants have no just complaint in that connection.

■ As we have already shown, special issue No. 3 submitted by the court was as follows: "Did the plaintiff, E. J. Conn, interest any person in the purchase of said mill plant property while the contract was in force?"

The principal objection to this issue was that an answer to it would not determine any principal point in the case, and would not therefore afford the basis of any judgment that should be rendered. Under the pleadings and the evidence in this particular case, we have concluded that special issue No. 3 was properly submitted to the jury, for this reason: We think that the evidence in this case introduced in behalf of the appellee, without stating it in detail, was sufficient to show that, after appellants listed their mill plant property with appellee for sale, he immediately commenced negotiations with the Boynton Lumber Company with a view to effecting a sale of the mill plant to that company.

The evidence shows, however, without dispute, that appellee was unable to effect a sale of the mill plant to the Boynton Lumber Company for anything like the price of $150,000. He was told by the Boynton Lumber Company that that company did not consider that the mill plant of the Philip A. Ryan Lumber Company was worth in excess of $30,000, but the evidence shows that later the Boynton Lumber Company was willing and able to pay as much as $50,000, for the mill plant, and this fact was communicated to appellants by appellee, but appellants refused to sell the mill plant for $50,000, and refused to sell it at that time for less than 70 per cent. of its value, which they claimed was $150,000. The evidence shows further, or was sufficient to warrant a finding, that after appellants had declined to sell the mill plant to the Boynton Lumber Company for $50,000, appellee still continued his negotiations with the Boynton Lumber Company for the sale of the mill plant, and was trying both to get the Boynton Lumber Company to come up on its offer for the property and to get appellants to come down on their price for the property. In other words, the evidence was sufficient to show that appellee continued his efforts to effect a sale and purchase of appellants' mill plant to the Boynton Lumber Company, and it was sufficient to show that appellants knew that appellee was still continuing his negotiations in that connection.

The evidence unquestionably showed that, as soon as appellee was authorized by the letter of April 9, 1926, to find and introduce a purchaser for the mill plant, he interviewed the Boynton Lumber Company, and that company became interested, in consequence of the efforts of appellee, in the purchase of the mill plant. The evidence was sufficient to show that on several occasions during the time that appellee was still negotiating with the Boynton Lumber Company for the sale of the mill plant he visited the property in company with the president of the Boynton Lumber Company with a view to bringing about a sale of the property to that company, and that this continued at intervals up to

about the time that appellants entered into a contract to sell the mill plant to the Boynton Lumber Company. It is true that Mr. Philip A. Ryan, president of the Philip A. Ryan Lumber Company, testified in effect that he had withdrawn or rather revoked all authority that had been given appellee to sell the mill plant because he (Mr. Ryan) believed that there was no reasonable expectation of selling the property to the Boynton Lumber Company or that appellee would be able to sell it to any one upon terms satisfactory to appellants; and Mr. Ryan, in this connection, testified in substance that he considered that appellee did not object to the revocation of his authority in connection with the property, and that Mr. Ryan considered or thought that appellee would not claim a commission if appellants should sell the property through their own efforts or the efforts of some one else, and that he (Mr. Ryan) had in fact informed appellee on several occasions that he would not pay any commission to appellee or any one else for the sale of the mill plant, unless the price therefor was at least 70 per cent. of its value, which, as we have shown, was claimed by appellants to be $150,000.

The evidence further showed that just about a week before appellants entered into a contract with the Boynton Lumber Company for the sale of the mill plant Mr. W. C. Trout, who is a citizen of the city of Lufkin where the mill plant was located, became interested in having the Boynton Lumber Company purchase the Mill plant from appellants, and Mr. Trout then commenced active negotiations with the Boynton Lumber Company with a view to effecting a purchase by that company of the mill plant of appellants, and, after about a week's effort on the part of Mr. Trout, appellants agreed to sell their mill plant to the Boynton Lumber Company, and did sell to that company their mill plant for the consideration of $65,000, and the deal was afterwards finally consummated by appellants making a deed of conveyance to the Boynton Lumber Company. Mr. Trout expected no commission for his efforts, and he did not in fact receive any.

After the sale of appellants' mill plant to the Boynton Lumber Company had been finally consummated, appellee demanded of appellants the sum of $3,000 as commission for his services in connection with the sale of the mill plant to the Boynton Lumber Company, and this demand was promptly refused, appellants stating to appellee that they owed him nothing, and thereupon this suit was filed. Upon these facts, which are only briefly stated, but we think with sufficient fullness for the disposition of this appeal, we have concluded that special issue No. 3, submitted for the jury's consideration, was not improper for the reasons suggested by appellants, but that, on the contrary, it was a proper and material issue under the pleadings and the evidence.

As we have construed the letter from appellants to appellee dated April 9, 1926, and above copied in full, appellee was thereby constituted appellants' broker for the sale of their mill plant. A broker, as we understand the term, occupies the position of a special agent to perform some specified service. In the case of Cox v. Cooper (Tex. Civ. App.) 11 S.W.(2d) 601, 604, which was a suit by the plaintiff for commission as a broker, the court, among other things, declared the law as follows:

"While it is true that though a broker may fail to procure a purchaser or a seller willing to sell or to buy upon the terms fixed by his principal, if the principal sells to or buys from one interested by the broker during the existence of the broker's employment, he, the broker, is entitled to his commission as contracted for."

A number of authorities are cited in the opinion just quoted from, all of which support the holding just quoted; among the cited authorities there being Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848; Keener v. Cleveland (Tex. Com. App.) 250 S. W. 151; 4 R. C. L. § 43, p. 298.

We repeat that, in our opinion, the undisputed evidence in this case showed that, through the efforts of appellee, appellants' broker, the Boynton Lumber Company, became interested in the purchase of appellants' mill plant, and the evidence was sufficient to warrant the jury's finding in answer to one of the special issues that during the negotiations between appellee and appellant for the sale and purchase of the mill plant appellants themselves sold the property to the Boynton Lumber Company. This of itself showed, as a matter of law, that appellee was the procuring cause of the sale by appellants of their mill plant to the Boynton Lumber Company, and entitled him to the commission under the terms of his contract for his services as broker, which was, as we have construed the contract, $3,000. Keener v. Cleveland, supra; Goodwin v. Gunter, supra.

Special issue No. 5, submitted by the court, as we have shown it above, was objected to on the ground that an answer to that issue would not afford the basis for any judgment to be rendered for several reasons, as stated by counsel for appellants. We overrule this contention. That issue merely asked for an answer by the jury as to whether the Boynton Lumber Company was willing, ready, and able to purchase the mill plant upon terms satisfactory to appellants. This issue was really an immaterial one under the facts of this case, for the reason that appellants, before Conn's relations as broker were concluded, took into their own hands the matter of selling their mill plant to the Boynton Lumber Company, and finally consummated a sale upon a price which is conclusively presumed to have been satisfactory to them. This issue might have been entirely

omitted from the court's submission, but its submission affords no ground of complaint to appellants. We make the same disposition, for the same reason, of appellants' objection to special issue No. 6, as submitted by the court, and as we have shown it above.

By special issue No. 7, as we have shown it above, the jury were asked to find whether or not the sale of the mill plant by appellants to the Boynton Lumber Company took place before negotiations of appellee with the Boynton Lumber Company were concluded. This issue was objected to mainly on the ground that it submitted to the jury a question of law. We overrule this contention. We think that a jury of ordinary intelligence would readily understand the meaning of this question as one of fact.

We have already shown above the special issues, being seven in all, that were requested by counsel for appellants, and which were refused by the trial court. We shall not discuss in detail each of these refused special issues. It is our opinion that special issues 1, 2 and 3, in so far as either of them was material to the issues made by the pleadings and evidence in this case, were covered by the court's own special issues, and therefore their refusal was not error.

We think that special issue No. 4 requested by appellants was properly refused for two reasons, if no other. That interrogatory to the jury called for an answer as to whether appellants were justified in believing that appellee, Conn, had abandoned his claim for a brokerage commission. It is clear that this interrogatory, as framed, assumed that appellants did believe that appellee had abandoned his claim for a commission, and for that reason the court was justified in refusing its submission. We also think that this interrogatory to the jury called for a finding wholly immaterial to any issue made by the pleadings and the evidence in this case. The real issue in this connection was not as to whether appellants believed that appellee had abandoned further performance on his part of his brokerage contract, and therefore would not claim a commission for his services, but the controlling issue was in that connection as to whether appellee did in fact abandon his efforts to sell appellant's mill property to the Boynton Lumber Company, and the jury expressly found, in response to a proper special issue submitted by the court, that he had not up to the time that appellants themselves took the matter into their own hands and sold their property to the Boynton Lumber Company. It will be borne in mind that appellee was not claiming exemplary damages against appellants in this case, and it may be that, if appellee had been seeking to recover exemplary as well as actual damages, appellants would have been entitled to have the jury find whether they, in good faith, believed that appellee had abandoned his brokerage contract and duties thereunder.

Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884. This cited case was a suit by a broker to recover a commission for his services, and one of the defenses interposed was that the owner of the property listed with the broker had revoked the broker's authority to sell before the owner himself sold his property to a purchaser who had been produced by the broker and was very much interested in the property. Among other things, our Supreme Court in that case, speaking through Mr. Justice Brown, said:

"The facts being such as to give a right of action to the defendant in error [the broker], and there being no exemplary damages found by the jury, it follows that the good or bad faith of Hancock in revoking the agency before its expiration, and thereby preventing the sale by Stacy, is immaterial. It matters not to Stacy what reasons influenced Hancock to change his mind with regard to selling the property, unless such reasons had a foundation in the failure of the agent to perform his duties, or at least were based upon some fault on the part of Stacy. There being no exemplary damages involved in the case, the purpose of Hancock, if any existed, to avail himself of the fruits of Stacy's work without compensation therefor could not affect the question of actual damages. Therefore it is unnecessary to discuss or consider that question."

So we hold in this case that the good faith of appellants, if it existed, in their belief, if they did believe, that appellee had abandoned his part of the brokerage contract, and would not claim a commission, was immaterial, since only actual damages were claimed by appellee and only that character of damages was recovered by him.

We have already shown above what special issue No. 5 requested by appellants was, and we hold that it was wholly immaterial to any issue in this case as made by the pleadings and evidence, and, besides, the belief, if any, on appellants' part, that they would not be responsible to appellee for a commission in selling when they themselves sold their property to the Boynton Lumber Company, could not affect appellee's right to recovery.

Special issue No. 6, requested by appellants, was properly refused, for the reason that the law conclusively presumes that the price which was obtained by appellants from the Boynton Lumber Company was satisfactory to appellants. Keener v. Cleveland, supra.

Special issue No. 7, requested by appellants, as we have shown it above, was properly refused, because it was established by the jury's finding in answer to one of the special issues submitted by the court, which finding was based upon sufficient evidence, that appellants sold their mill property to the Boynton Lumber Company before appellee's efforts in that connection had ceased, and

while he was still negotiating with the Boynton Lumber Company for the sale of appellants' property; and, as we have stated above, appellants at the time of the sale knew that appellee was still negotiating as broker with the Boynton Lumber Company. This being true, the law conclusively presumes that appellee was the procuring cause of the sale of appellants' property to the Boynton Lumber Company, regardless of whatever efforts were made by Mr. Trout to effect a sale of this property. Gunter v. Goodwin, supra; Keener v. Cleveland, supra, and authorities there cited.

Though we have not discussed in detail a number of contentions made by appellants for reversal of this judgment, yet we think, after careful consideration of them all, that none of them present any error, if error at all, prejudicial to appellants; and, since this opinion has already been carried to greater length than is necessary perhaps, we will not discuss other contentions than those already noticed.

It results from the above conclusions that the trial court's judgment should be affirmed, and it has been accordingly so ordered.

Affirmed.