## AMEND v. SEALY & SMITH FOUNDATION FOR JOHN SEALY HOSPITAL.

### No. 5931.

Court of Civil Appeals of Texas. Amarillo.

Feb. 7, 1949.

Rehearing Denied March 21, 1949.

Underwood, Wilson, Sutton, Heare & Boyce, of Amarillo (H. A. Berry, of Amarillo, of counsel), for appellant.

Boyer, McConnell & Hankins, of Perryton, and Wigley, McLeod, Mills & Shirley, of Galveston, for appellee.

LUMPKIN, Justice.

Among the properties owned by the appellee, The Sealy & Smith Foundation for the John Sealy Hospital, a charitable corporation organized for the purpose of supporting and maintaining the John Sealy Hospital of Galveston, Texas, is Section 3, Block 3, H. & G. N. Ry. Co. Survey, situated in Hansford County, Texas. With the exception of some 113 acres, which was broken out sometime in the '30s, this was a grass section.

In October, 1940, the appellant, J. D. Amend, obtained from the appellee a three year pasture lease on Section 3. Among the terms of the lease was a provision whereby the lessor, in the event it desired to lease the land for agricultural purposes,

could terminate the lease by giving the appellant thirty days written notice. In 1943 a new three year lease of the same type was made between the parties; and on September 18, 1946, appellee again leased this property to the appellant under the same conditions and for the same length of time as provided by the two former leases. This last lease began October 14, 1946, and was to terminate October 13, 1949. As consideration for the lease, the appellant paid appellee $354.84 for the first year and gave the Foundation two promissory notes, each in the amount of $354.84, for the remaining two years. For several years the appellant, without the knowledge of the appellee, had planted wheat on the 113 acres.

It appears that for a number of years John Adriance & Sons, a partnership engaged in real estate and loan business at Galveston, has been the appellee's negotiating agent. This concern had no authority to execute leases on behalf of the Foundation. Their duties extended only to working out details concerning leases on appellee's properties. After a lease was agreed upon, a letter explaining the proposed transaction was written The Sealy & Smith Foundation, and the lease was then either approved or rejected by the officers of the Foundation.

On March 7, 1947, the appellant received the following letter from John Adriance & Sons: "We beg to notify you that we have leased * * * Section 3 * * * for farming purposes and we hereby request and demand possession of the said land on March 31, 1947—as provided for in the lease * * * We are enclosing our check your favor for $190.20 same being refund to you of the rent from April 1, 1947 to October 14, 1947 the date to which you have paid." A postscript to the letter stated, "Please deliver possession to Mr. Roy Jeoffroy or his agent." The letter was dated March 1, 1947.

Upon the receipt of this notice, the appellant telephoned Henry T. Adriance of John Adriance & Sons and told him that he, the appellant, had been saving the grass on Section 3 and therefore he wanted to keep the land a little longer and use the pasturage he had saved. According to the appellant,

Adriance told him that anything he worked out with Jeoffroy would be all right. In the course of the trial, Henry T. Adriance denied this portion of the appellant's testimony.

About the middle of March, according to the appellant's testimony, he had a telephone conversation with Jeoffroy in which he asked permission to graze the section, and Jeoffroy told him to use the land, "to possible graze the section until around the first of May." However, the record reveals that before the appellant's original thirty days were up, about March 28, 1947, Jeoffroy's employees entered upon Section 3, burned the grass, and commenced breaking out the land. As a result of Jeoffroy's premature entry upon the section and the resulting damage to the pasturage, the appellant and Jeoffroy entered into an agreement, the terms of which were confirmed by a letter dated April 22, 1947, addressed to Jeoffroy and signed by the appellant. We quote the relevant excerpts: "This will confirm the terms of our settlement of the claim that I have asserted against you * * * for damages because of your entry upon Section 3 * * * while I had such property under lease, and the destruction of the grass and damage to growing crops * * * You have today paid to me the sum of $887.50, and have agreed that no further damage to the growing wheat upon said land will be caused by you * * * and that none of said wheat will be destroyed until after I have harvested same. I * * * accept such payment * * * in full settlement of all claims * * * I agree to harvest the growing wheat crop on said land when same is ready to be harvested, and to give possession of such part of the land that is planted in wheat behind the combine so that you may plow same."

On June 19, 1947, the appellant was advised by appellee's attorneys that an investigation had revealed that wheat was growing on Section 3 and that the appellee had employed these same attorneys to collect rent for the present crop and secure adjustments for former crops. To this communication the appellant, on June 21, 1947, answered appellee's attorneys by writing, "* * * I do not recognize that any part

of the wheat that may be harvested from such land is the property of Sealy & Smith Foundation."

On June 26, 1947, the appellee filed this suit against the appellant. In its petition the appellee set forth the formal allegations of a trespass to try title suit together with special pleadings alleging that it was entitled to possession of the section and an accounting for wheat crops grown in previous years and "any crops that are growing upon said lands at this time." The same day this suit was filed, the sheriff of Hansford County took possession of the section under a writ of sequestration; and thereafter, under the direction of the sheriff, the wheat was harvested on the 113 acres.

The appellant pleaded that the 113 acres were planted in wheat to control wind erosion and to furnish pasturage; that following his notice to vacate the section, he was advised by Henry T. Adriance that whatever arrangements he made with Jeoffroy to continue in possession of the property would be satisfactory to the appellee; that later he entered into an agreement whereby Jeoffroy allowed the appellant to retain possession of 113 acres of wheat. The appellant alleged that he was entitled to possession of the land under the terms of the lease and alleged, in the alternative, that by virtue of his agreement with Jeoffroy he was entitled to retain possession of the 113 acres from which 2,090 bushels of wheat were harvested. Appellant contends he is entitled to recover the market value of the harvested wheat.

Trial was to a jury. From the eighteen special issues submitted, the jury determined, among others, the following facts: That Henry T. Adriance, immediately after March 7, 1947, did not tell the appellant in a telephone conversation that whatever arrangements he worked out with Roy Jeoffroy concerning Section 3 would be satisfactory with the appellee; that Adriance was not authorized by the appellee to delegate to Jeoffroy the authority to give all the wheat growing on Section 3 to the appellant; that as a result of the March 7 telephone conversation with appellant, Adriance did not receive the information that wheat was growing on Section 3; but that on or about April 22, 1947, Jeoffroy did agree with the appellant "that he, J. D. Amend, could remain in possession of the 113 acres of Section 3, upon which wheat was growing, and cut such wheat and retain same;" that in 1947, 2,090 bushels of wheat were harvested from Section 3; and that as rental on land, such as Section 3, it was customary for a tenant to pay the landlord a share of the crops harvested from the cultivated portion of the tract in addition to a cash rental covering the whole of said tract.

In its judgment the court awarded appellee one-third of the wheat harvested and sold from the 113 acres, less $192.20, the amount appellee had tendered appellant as a refund under the lease contract; and awarded the appellant two-thirds of the wheat harvested and sold, less the total cost for harvesting and hauling, and added thereto $192.20. Of the grain harvested and not sold, the court gave one-third to the appellee and two-thirds to the appellant. The court adjudged one-third of the costs against the appellee and two-thirds against the appellant. In due time the trial court overruled appellant's motion for a new trial. To this action and ruling of the court, the appellant duly excepted, and the case is now properly before this court for disposition.

In attacking the judgment the appellant contends that the trial court erred in disregarding the jury's answer to special issue 7 and substituting therefore its own conclusion as a matter of law. Special issue 7 reads as follows: "Do you find from a preponderance of the evidence that prior to the time that Roy Jeoffroy agreed with J. D. Amend that he, J. D. Amend, could remain in possession of the 113 acres of Section 3, upon which wheat was growing, and cut such wheat and retain same, plaintiff [appellee] had leased Section 3 to Roy Jeoffroy, covering the month of April and subsequent months of 1947, to and including harvesting season of such year."

To this inquiry the jury answered, "Yes." In its judgment the trial court concluded as a matter of law that Section 3 was not leased to Jeoffroy until July, 1947, which was, of course, several months after the agreement between the appellant and Jeoffroy.

The appellee objected to the submission of special issue 7 on the grounds that the evidence was insufficient to raise such a question, and if such an issue was raised, it was a mixed question of law and fact and should be determined by the court. Adriance's letter advising the appellant that Section 3 was being leased for agricultural purposes was sufficient to raise the issue. Although issues involving mixed questions of law and fact should not be submitted to a jury, special issue 7 presents a question of fact rather than one of law. Speer's Law of Special Issues in Texas, p. 47. It seeks to determine a question of time only. Mason v. Gantz et al., Tex.Civ.App., 226 S.W. 435; Philip A. Ryan Lumber Co. et al. v. Conn., Tex.Civ.App., 20 S.W.2d 388, dismissed; Traders & General Ins. Co. v. Rhodabarger, Tex.Civ.App., 93 S.W.2d 1180, dismissed. However, since the jury found in response to special issue 1 that Adriance did not tell appellant that whatever arrangements he worked out with Jeoffroy would be satisfactory with the appellee and since the jury found in its answer to special issue 16 that Adriance did not have the authority to give all the wheat growing on Section 3 to the appellant and since, as we shall presently see, the appellee never recognized the appellant as a tenant after the termination of the grass lease, in our opinion the jury's finding in response to special issue 7 becomes immaterial to a correct judgment in the case.

Next, the appellant insists that the court erred in disregarding the jury's answer to special issue 12 and substituting therefor its own conclusion as a matter of law. Special issue 12 inquires whether, after the April 22 agreement with Jeoffroy, the appellee recognized J. D. Amend, the appellant, as a tenant on the land. The jury answered in the affirmative. The court set aside this finding and concluded, as a matter of law, that the appellant was not recognized as a tenant. In support of his contention appellant cites the letter of June 19, 1947, signed by appellee's attorneys in which it is stated, "Our client expects as rental on this crop the usual one-third division." This demand for rent, the appellant insists, is a recognition of Jeof-

froy's sublease as a matter of law, citing Wright et al. v. Henderson, Tex.Civ.App., 86 S.W. 799. We cannot agree with the appellant in this contention. In our opinion there is nothing in appellee's communication of June 19 which could be construed as recognizing the appellant as appellee's tenant. The letter is nothing more than a demand for payments to which the appellee considered itself entitled by virtue of conditions which had been brought about by the appellant without authority from either the Foundation or Adriance.

The only written lease existing between these parties was executed September 18, 1946. Adriance's letter of March 1, 1947, notifying the appellant to vacate the property within thirty days, and the tender of the unearned portion of the rent money, was in keeping with the unambiguous terms of the lease. This evidence is uncontradicted; and, therefore, the question of whether appellant's lease was terminated became a question of law for the court to determine and not one of fact to be presented to a jury. The court properly determined that, prior to April 22, 1947, the grass lease was terminated by the terms of the lease. Walling v. Houston & T. C. R. Co., Tex.Civ.App., 195 S.W. 232, writ refused. The record reflects that the appellant contacted neither the appellee nor Adriance after this date, except for his letter of June 21, 1947, addressed to appellee's attorneys, in which he stated that he did not recognize appellee as having any interest in the growing wheat. There is no evidence in the record that the parties entered into a new lease after the termination of the grass lease. In our opinion the trial court did not err in concluding, as a matter of law, that the Foundation did not recognize the appellant as a tenant after April 22, 1947.

Third, the appellant contends that the sequestration issued in this case was wrongful and that the court erred in deducting the harvesting expenses from appellant's share of the crop.

The record reveals that on June 26, 1947, the sheriff of Hansford County executed the writ of sequestration by taking into his possession Section 3.

■■ The sequestration was not wrongful. Whether a sequestration is wrongful is a question to be determined by a jury from the facts. Rogers v. O'Barr & Dinwiddie, Tex.Civ.App., 76 S.W. 593. In response to special issue 14, the only issue dealing with this subject, the jury found that on June 26, 1947—the date the writ of sequestration was issued—the appellee feared that appellant would convert to his own use the fruits and revenues produced on Section 3. The appellant offered neither the affidavit nor the sequestration bond in evidence. Under circumstances in which the statement of facts fails to reflect the reasons for issuing the writ, this court has held that the appellant has not shown the sequestration wrongful as a matter of law. Miller v. Lyles, Tex.Civ.App., 88 S.W.2d 1082; McMillan v. Moon, 18 Tex.Civ.App., 227, 44 S.W. 414. Thus, in this absence of such proof, it cannot be said that the sequestration is wrongful; and, therefore, the court did not err in taxing two-thirds of the costs against the appellant.

■ The sheriff harvested the wheat crop soon after executing the writ of sequestration. In two verified reports, filed among the papers in this case, the sheriff shows the amount of wheat harvested, its disposition, and an itemized account of the harvesting expenses. The appellant made no complaint of the correctness of the expenses cited in these reports; and, in our opinion, they were properly considered by the court as containing a correct account of the expenses incurred by the sheriff in harvesting the wheat. Moreover, the record reflects, by the appellant's own testimony, that it is ordinarily the custom in Hansford County for the tenant to bear all the expenses of raising and harvesting a crop. The trial court correctly deducted the harvesting expenses from appellant's share of the crop.

The appellant has failed to establish the assertions necessary for him to prevail on this appeal. Although the jury found that the appellant entered into his agreement with Jeoffroy after the appellee had leased the section to Jeoffroy, the evidence shows that Jeoffroy was never authorized, either by the appellee or Adriance, to sublease the property; and, furthermore, after appellant's lease was terminated, the appellee did not recognize the appellant as either its tenant or Jeoffroy's subtenant.

After a careful examination, all of the appellant's points of error are overruled. The judgment of the trial court is affirmed.