**SHOOK v. PARTON.**

No. 5872.

Court of Civil Appeals of Texas.   Amarillo.
April 12, 1948.

Rehearing Denied May 10, 1948.

Stone & Stone, of Amarillo, for appellant.

Sanders, Scott, Saunders & Smith, of Amarillo, for appellee.

PITTS, Chief Justice.

This is a brokerage suit in which appellee, W. L. Parton, a licensed realtor, filed suit against appellant, E. F. Shook, to recover $960 as a five per cent commission on $19,200, alleged to be due by virtue of appellee's efforts in procuring a purchaser for 320 acres of land sold by appellant to Fred Weigman on September 27, 1947. The action was founded upon a series of letters that passed between the parties, which appellee contends constitutes a memorandum of a promise or agreement in writing sufficient to comply with the provisions of Article 6573a, Vernon's Annotated Civil Statutes, known as the Texas Realtors Act.

The case was tried to a jury which found that appellee was the procuring cause of the sale of the land and judgment was rendered for appellee upon the verdict for the sum of $960 from which judgment an appeal has been perfected to this Court. The principal grounds upon which appellant attacks the judgment are that the contract for the listing of the land in question was not enforceable since it was not in writing, not signed by appellant and the letters in question do not give a sufficient description of the land as required by Section 22 of Article 6573a.

The record reveals that early in 1947 appellee, as a brokerage agent for the owner of the land at that time, sold the said land in question to appellant; that in the summer following appellant listed the land with appellee in an oral agreement understood by both parties and authorized him to sell the land at $65 acre without reserving any mineral rights for which services appellee was to receive five per cent as commission; that appellee was offering the land for sale and had early in August of 1947 advertised the same for sale in an Amarillo paper without describing the land fully; that on or about August 11, 1947, appellee had an inquiry through the mail from Fred Weigman written on a postal card as follows:

"Box 37—Claude, Texas,

"Dear Mr. Parton: Just a few lines to find out where your 320 acres farm is, that you have for sale, 24 miles east of Amarillo, near pavement; also let me know if you have other land near Claude, on pavement, or Washburn. I want to buy only on the pavement, and near town; don't care to buy any land west of Washburn. Let me hear from you at once.

"Sincerely—x/ Fred Weigman."

Thereafter on August 13, 1947, appellee replied to Fred Weigman's inquiry as follows, to wit:

"August 13, 1947.

"Mr. Fred Weigman,
"P.O. Bx 37,
"Claude, Texas.
"Dear Mr. Weigman:

"I was glad to have your inquiry as to the 320 acres well improved some 24 miles east of Amarillo I advertised for sale. Am sorry I missed you from home when I drove down to see you, but am sure Mrs. Weigman gained a fair idea of the property in our conversation. Really, this is one of the choice farms anywhere west of Claude, has a very good house of some 5 or 6 rooms, excellent well of rather shallow water, about 185 feet as I understand, new windmill, new granary of some 3000 or 4000 bushel capacity, with driveway and extended shed that could easily be converted into another granary, connected to good plank corrals; large drinking trough supplying the corrals and both

the larger and small pasture. Also a good cement block dairy barn, and think other outside improvements. The house is not new, but seems to be in good repair, good heavy thick walls, near a new roof. The house could be sold for a fairly good price I think to be moved to Amarillo. The farm is generally known as the McCall place, some 6 or 7 miles up the Ry. west of Claude, about 2 miles south of the pavement, and Ry. Switch. Has about 240 acres in cultivation and 80 acres in grass. No lake, all very fine land, excepting there are some vine weed, I don't think bad, mostly a spot just northeast of the improvements as I remember. The present owner is Mr. E. F. Shook, who sold about $15,000.00 worth of wheat from the place this year. The price right now is $65.00 per acre including all of the 240 acres well plowed and immediate possession of the place as it is. All mineral rights included, present indebtedness about $9,000.-00 *dur* in about 4½ years bearing interest at 5%, or all can be paid off at any time before maturity. Mr. Shook told me last week if the place did not sell by 20 of this month he intended to withdraw it for market. If you would like for me to show you over the place, I will be glad for you to call me by phone and I will be right down, or if you want to drive out and see the place yourself, you do that, as you will find Mr. Shook a very nice man and I think you will like his place after you look it over and see what it is, regardless of what other people might tell you.

"Yours very truly,"

(the above and foregoing letter was taken from a copy introduced since the original was not produced and the evidence shows the original was signed by appellee); that on the same day appellee wrote appellant the following letter, enclosing a copy of the letter to Weigman hereinabove set out, and mailed them both to appellant;

"Amarillo, Texas, Aug. 13, 1947.

"Dear Mr. Shook:

"Inclosed is copy of letter to Fred Weigman which is self-explanatory. I drove down to see him this morning but he had left to attend a farm sale over at Dumas. In talking to his wife, I learn they are awful scared of the vine, or possession weed, and this might keep him from coming out for inspection. Rather think he will come out himself without bothering me. He is a good man, and awful able to make such a deal. However, his wife talked like they had not sold their wheat yet, and would have to sell or arrange for money before they could buy much. But, don't let any such talk bother, if he wants the place. I would be glad to have his plain note for most any amount he would indicate. With kindest regards,

"Yours truly,"

(the above and foregoing letter was taken from a copy introduced since the original was not produced and the record reveals that the original was signed by appellee); that appellee thereafter received the following post card from appellant:

"Aug. 27, '47.

"Mr. Parton, if nothing happens to bother me, I will finish the plowing Saturday. Monday will be nice time to bring that man out, or if you had rather, Sunday.

"s/ E. F. Shook."

The record further reveals that, at some time subsequent to the original listing and during personal negotiations between appellant and appellee, appellant had decided to vary the terms of the original listing and appellee wrote appellant the following letter:

"Sept. 12, 1947.

"Mr. E. F. Shook,

"Claude, Texas.

"Dear Mr. Shook:

"Think I might have a prospective buyer for your 320 acres first of next week. Wish you would drop me a few lines advising what your idea is now as to selling, your best price including possession, usual 5 per cent commission, terms cash above indebtedness. Am going to be out of town over weekend, but should be home Monday evening. Will be glad to have letter from you by that time. With kindest regards, I am,

"Yours very truly,

"s/ W. L. Parton."

We further find that appellee received the following reply from appellant:

"Claude, Texas, Sept. 14, 47.

"Mr. Parton, received your letter. I will take $67.50 per a. or $21,600.00, and

pay you 5%,—$12690.00 cash; I keep tank, also put 8 ton hay in barn. I will let tank go with place. Would want to move hay, or sell hay.

"Yours truly,

"s/ E. F. Shook."

Soon thereafter on September 27, 1947, appellant sold the land himself to Fred Weigman for $60 per acre or a total of $19,200, without reserving any mineral rights; and that appellee thereafter sued appellant for commission on the sale price of the land.

■ Section 22 of Article 6573a, upon which appellant relies for a reversal, provides that no action shall be brought for recovery of a commission for the sale or purchase of real estate unless the promise or agreement, or some memorandum thereof, upon which the action is founded, shall be in writing and signed by the party to be charged therewith or his duly authorized agent. This Court has held that in determining the sufficiency of the description of the land contained in the contract of employment, the rules governing the construction of Article 3995, Vernon's Annoted Civil Statutes, apply. Dickson v. Kelley, Tex.Civ.App., 193 S.W.2d 256, and Dunn v. Slemons, Tex.Civ.App., 165 S.W. 2d 203. It has likewise been held that Section 22 of the said Article does not attempt to prescribe the essentials of a cause of action for the recovery of a real estate agent's commission upon the sale of the land. It simply provides that "the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith * * *." This means that there must be a promise to pay a commission, and that the tract of land to be sold must be identified by the writing. Volkmann v. Wortham, Tex.Civ.App., 189 S.W.2d 776. All the statute requires is written evidence from which the whole contract may be made out. The statute may be satisfied by letters passing between the parties that contain the terms of the offer and an acceptance, provided the letters are signed by the respective parties. Peters v. Phillips, 19 Tex. 70, 70 Am.Dec. 319; Gulf,

C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 15 S.W. 228; McKy v. Walker, Tex. Civ.App., 293 S.W. 921; Schawe v. Giles, Tex.Civ.App., 55 S.W.2d 588; Volkmann v. Wortham, supra; 20 Tex.Jur. 308–9, Paragraph 100, and 49 Am.Jur. 695–696, paragraph 392. It has been further held in such cases that the memorandum in writing may be made subsequent to the agreement made. Black v. Hanz, Tex.Civ. App., 146 S.W. 309.

■ The writing relied on must furish within itself, or by reference to some other existing writing, the means or data by which the particular land referred to in the writing may be identified with reasonable certainty. Although the essential elements of the contract may never be supplied by parol, the details which explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. Dickson v. Kelley, supra; Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150.

■ Appellant contends that there were some limitations and variations in the terms of the agreement that necessarily terminated the original contract on or about August 20, 1947, and a new contract was thereafter made, but such a contention is not supported by the writings that passed between them other than a statement by appellee in his letter to Weigman of date August 13, 1947, that appellant told him, "last week if the place did not sell by 20 of this month he intended to withdraw it from the market" and the raise in the price of the land and the reservation of one-half of the mineral rights. These matters are not material since the record reveals that the parties continued their negotations to sell the land both orally and in writing, the land was never taken off of the market, the listing was never withdrawn from appellee and appellant did sell the land himself to Weigman for less than he had ever listed it with appellee and without reserving any of the mineral rights. The rules of law above cited are just as binding on appellant as they are on appellee when it comes to varying by parol evidence any of the material terms of the written memorandum evidencing a promise or agreement between the parties.

The letters that passed between the parties show the name of the owner of the land, the name of the agent offering the land for sale, the original price fixed for the sale of the land per acre ($65), mineral rights included, and a change later to $67.50 per acre reserving one-half of the mineral rights, the commission of five per cent and a description of the farm "generally known as the McCall place, some 6 or 7 miles up the Ry. west of Claude, about 2 miles south of the pavement, and Ry. switch" containing 320 acres and "has about 240 acres in cultivation and 80 acres in grass." It is our opinion that the above and foregoing elements shown in the writings constitute the essential elements of the contract under the provisions of the law and the authorities heretofore cited, however, in support of both the description of the land and the terms expressed, we cite the additional case of Morrison v. Dailey, Tex., 6 S.W. 426. There was a period of about a month between the first and last letters written. It is our opinion that they were continuous and closely enough connected with each other to form one transaction. The record reveals that appellant and appellee negotiated orally a number of times in addition to the writings and that they worked together harmoniously endeavoring to sell the land. The record further reveals that appellee advertised the land for sale in the Amarillo paper many times during the months of July, August and September of 1947, and that he did not know the land had been sold until about November 1, 1947.

■■■ Appellant contends that he is not liable to appellee for the commission because appellee abandoned his efforts to sell the land to Weigman and that he therefore sold the land to Weigman independently of any efforts made by appellee who did not participate in the closing of the sale and had no knowledge of the same until after it had been consummated. The evidence does not support appellant's contentions of abandonment. On the contrary the evidence reveals conclusively that appellee tried continuously to sell the land to any interested purchaser. The jury found that appellee was the procuring cause of the sale of the land and the evidence is amply sufficient to support such finding. It has been held that a real estate broker is entitled to a commission for effecting a sale, if he is the efficient cause of the sale by bringing the parties together by negotiations, although the sale is thereafter concluded by the owner himself. Spires v. Mann, Tex.Civ.App., 173 S.W. 2d 200. It is our opinion that the letters in question establish a sequence of writings that constitute one transaction evidencing a memorandum of a promise or agreement in writing sufficient to comply with the provisions of the Texas Realtor Act and that appellee tried continuously to sell the land and any of appellant's contentions or points to the contrary are therefore overruled.

Appellant complains in point 4 that the trial court erred because of its refusal to submit appellant's requested special issues numbers 1, 2 and 3 and refers us to nine different assignments of error in his motion for a new trial.

Appellee challenges this point as being duplicitous and multifarious and says the same should not be considered by us. The three requested special issues refused by the trial court are stated as follows:

"Do you find from the evidence that the plaintiff could have sold said land to Fred Wiegman for $67.50 an acre, Shook retaining an undivided one-half interest in the minerals?"

"Do you find from the preponderance of the evidence that on or after September 14, 1947, and upon evidence of transactions transpiring only on or after that date, plaintiff was the procuring cause of the Sale of E. F. Shook's land to Fred Wiegman?"

"Do you find from preponderance of the evidence that the plaintiff, Parton, produced the purchaser, Fred Wiegman, who was ready, able and willing to buy said lands at $67.50 an acre, Shook, the defendant, retaining an undivided one-half interest in the minerals?"

■■■ It has been held by this Court that a point or assignment of error is multifarious when it embraces more than one specific ground of error or when it attempts to attack several distinct and al-

leged errors or rulings of the trial court. Hudspeth v. Hudspeth, Tex.Civ.App., 206 S.W.2d 863 (published now only in the advance sheet) and numerous authorities there cited.

It is our opinion that the three requested issues and the assignments of error cited in support thereof inquire about several separate and distinct matters and that appellant's point number 4 embraces more than one specific ground of error and that appellant attempts to attack several alleged distinct errors or rulings of the trial court in one point and that the said point is therefore duplicitous and multifarious. However, we have already passed on some of the complaints made in the point and because of our liberal construction of the rules in such matters, as expressed in the Hudspeth case, we will further consider and dispose of the said point. Because of the finding of the jury that appellee was the procuring cause of the sale, because of the fact that appellant sold the land to Weigman for less than he had ever listed it with appellee, and without reserving any mineral rights and because of the rules of law heretofore cited, it is our opinion that the matters inquired about in the said three requested special issues were immaterial. We further cite the following authorities in support of our position, Hardy v. Webb, Tex.Com.App., 282 S.W. 210; Volkmann v. Wortham, supra. Appellant's point 4 is therefore overruled.

Appellant contends in point 5 that the trial court "erroneously excluded the testimony of witnesses Fred Weigman and wife to the effect that the efforts of appellee did not bring about their purchase of the land." Appellant charges that the following proceedings were had during redirect examination of Mrs. Fred Weigman as a witness:

"Q. Did Mr. Parton have anything at all to do with your buying this land? A. Not a thing.

"Q. Did he influence you in buying it, in any way? A. No, we knew about it.

"Mr. Saunders: That calls for a conclusion of the witness.

"The Court: Sustain the objection.

"Mr. Stone: Note our exception—that is all."

Appellant further complains that the same proceedings were had in the examination of Fred Weigman as a witness.

The record reveals that the evidence was heard by the jury and it was never excluded from the jury by the trial court. The record further reveals that appellee's counsel belatedly objected each time after the question had been asked by counsel and after the witness had answered the question fully. The objection was sustained by the trial court after the evidence had been heard by the jury. There was never a motion made to strike the testimony in either instance nor did the trial judge instruct the jury not to consider the testimony in either instance. The record further reveals that, after the proceedings above referred to were had, Fred Weigman further testified that he did not consider that appellee had anything to do with the sale and that Mrs. Weigman so testified in effect when she testified that they had known all about the place in question for two years before appellee got in touch with them about it. The record therefore reveals that both witnesses expressed their opinions to the jury to the effect that appellee did not influence them in buying the place independently of the proceedings about which appellant here complains. Since the record reveals that the evidence about which appellant complains was never excluded from the jury and since other evidence of like import was given by both witnesses within the hearing of the jury, it is our opinion that no reversible error has been shown and point 5 is therefore overruled.

A careful examination of the record and of the briefs reveals to us that the judgment of the trial court should be affirmed and it is so ordered.