**AIR CONDITIONING, Inc. et al. v. HAR-RISON–WILSON–PEARSON.**

No. 10052.

Court of Civil Appeals of Texas. Austin.

June 11, 1952.

Rehearing Denied June 25, 1952.

Hart, Brown & Sparks, Jack Sparks, and Jones, Herring & Jones, all of Austin, for appellants.

David L. Tisinger, Austin, for appellees.

ARCHER, Chief Justice.

This suit was instituted by appellees against appellants for a real estate commission. The trial was had with the aid of a jury, but after all parties had rested, the court withdrew the case from the jury and instructed a verdict for appellees, and entered judgment.

The appeal is before this Court on eleven points assigned as error in the disposition of the case by the trial court, and are to the effect that the written listings automatically terminated at 4:00 o'clock p. m. on March 8, 1949; that plaintiffs had no legally enforceable written memorandum at the time of the sale; that the court erred in failing to submit to the jury the issue of whether defendants had wrongfully terminated the employment of plaintiffs prior to the sale; in failing to submit the issue of whether plaintiffs had failed to use due diligence in prosecuting the sale of defendants' property; that it was error for the court to not submit the issue of whether defendants had given the plaintiffs a reasonable time in which to sell the property prior to the time employment was terminated; that there was a fact issue as to whether plaintiffs wrongfully refused to carry out defendants' instructions in prosecuting the sale which should have been submitted to the jury; that the written listings were unilateral, not obligating the plaintiffs to take any action and were lacking in mutuality and are unenforceable; that there was no consideration given for the' written listings and they are not binding on defendants if the plaintiffs agreed to use due diligence in attempting to sell the real property, such consideration failed; that it was error for the court to fail to submit to the jury the issue of whether F. F. Knight was the procuring cause of the sale to the Watermans; that the court was in error in failing to submit the issue of whether plaintiffs were the procuring cause of the sale to the Watermans; and finally that the court erred in holding that the written listings met the requirements of the Real Estate Dealers License Act, because the real property is not sufficiently described in the listings, or in some other instrument referred to therein.

The appellees counter with two points to the effect that the listing was continuous until the discharge, and then until plaintiffs had set the stage for the sale and that the writings were memoranda of the agreement; that the undisputed evidence showed that plaintiffs produced the prospect to whom the sale was made and that plaintiffs had not abandoned their efforts prior to being discharged, and that plaintiffs became the procuring cause as a matter of law, all other questions of wrongful termination, diligence, reasonable time, and refusal to obey instructions become immaterial.

We recognize that in reviewing the action of the trial court to determine whether it was proper to instruct a verdict that we view the evidence in the light most favorable to the losing party, and we shall indulge every inference that may be properly drawn from the evidence against the instruction, realizing that a peremptory charge is only warranted where the evi-

dence is such that no other reasonable verdict can be rendered and that such charge is justified as a matter of law.

Kelly v. McKay, Tex.Sup., 233 S.W.2d 121, and cases cited therein.

The plaintiffs are real estate dealers, and prior to March 7, 1949, had a verbal listing to sell the real property belonging to defendants. On March 7, 1949, two written listings were given to plaintiffs by defendants authorizing a sale of the real property. Plaintiffs pleaded that subsequent to the execution of the listings they proceeded with due diligence to sell the property, but on March 11, 1949, their employment was wrongfully terminated by defendants and a short time thereafter the property was sold to the Watermans who the plaintiffs had interested in the property, and further alleged that they were the procuring cause of the sale and were entitled to be paid a commission.

"4 P.M.

Austin, Texas, March 7, 1949

"To Harrison-Wilson-Pearson
Austin

"For and in consideration of One Dollar ($1.00) receipt of which is acknowledged, I, or we hereby give you exclusive right to make sale of the real property herein described as 128 ft. by 49 ft. at N.E. corner of intersection of West 15th & Guadalupe Sts., Austin, Texas, for the period of 24 hrs. from this date, for the price of $105,000.00 on the following terms: Cash, and you are hereby authorized to enter into contract with parties desiring to purchase said property, within this authority, such contract to be binding upon me or us.

"In case sale is made of said property within the time specified at the above named price, or any other price that is acceptable to me or us, or after the expiration of said period if accepted by me or us, I, or we agree to execute to the purchaser a good and sufficient warranty deed to said property, and to furnish a complete abstract of title certified to date of said sale, prorate taxes and rents to date of transfer and pay for all other expenses customary in the transfer of property; and it is further agreed that you shall have and may retain from the proceeds of sale 3 per cent commission on the above named price, or any other price, that may be accepted by me or us. "Witnesses:

"_____

Signed  John Broad Const. Co.
    By  John Broad
Signed  Air Conditioning, Inc.
    By  Frederick Scott"

The other listing is in the same words as set out above except the price is "* * * $107,400.00 on following terms $97,500.00 cash and $10,000.00 second lien note * * *."

The defendants denied the allegations in plaintiffs' petition and alleged that the written listings were effective for only twenty four hours and automatically terminated at the end of that time and that there was no enforceable written listing after the twenty-four hour period, and that the plaintiffs failed to prosecute the sale with due diligence, refusing to carry out defendants' specific instructions, and that the employment was rightfully terminated prior to the sale of the property. Defendants alleged that the written listings were not supported by a valid consideration or that such consideration had failed, and alternatively that the listings were unilateral, lacking in mutuality, and were insufficient in law to form the basis of any liability on the part of defendants, and that after the termination of plaintiffs' employment the real property was sold by another real estate agent and defendants paid the agreed commission to such agent.

It appears that defendants, who were contractors, acquired the property from a then owner in settlement of debts due them, and assumed an outstanding note, and desired to dispose of the property as quickly as they could, and listed the property with a number of agents including the plaintiffs. Dr. S. F. Waterman, his wife and son became interested in the property through the efforts of plaintiffs and plaintiffs showed it to them. The owners were

asking $115,000 for the property. The Watermans applied to Knight, a loan broker, for a $70,000 loan.

On February 18, 1949, a conference was had between the plaintiffs, the defendants and the Watermans, and the Watermans asked the defendants if they would sell the property for $110,000, but no offer was made. On February 26, 1949, Mr. Knight informed the Watermans that he had a loan commitment of $60,000, which was the largest he could get. The Watermans offered $100,000 for the property, which was rejected by defendants, who a day or so later instructed the plaintiffs to make a counter offer to sell for $110,000, which offer the Watermans did not remember of having received.

The plaintiffs informed Knight that a sale could not be made to the Watermans. Knight requested the plaintiffs to withdraw and permit him to try to sell the property, to which the plaintiffs made no reply. Knight was able to secure an additional loan as a second lien for $10,000, which information was made known to all concerned.

On March 7, 1949, the defendants authorized the plaintiffs to sell the property for $107,500 within twenty-four hours and at the same time instructed the plaintiffs to sell the property for $105,000 if unable to sell for the larger amount within twenty-four hours, and to make known such offers to the Watermans, and the listing cards hereinabove set out were made up. The plaintiffs communicated the offer to sell for $107,500 to the Watermans but did not inform them of the lesser amount.

No further progress with the sale was made by plaintiffs and on March 11, 1949, the defendants notified plaintiffs not to further offer the property for sale by letter as follows:

"March 11, 1949.

"Mr. C. D. Wilson
Harrison-Wilson-Pearson
305 West Sixth Street
Austin, Texas

"Dear Mr. Wilson:

"This will confirm our telephone conversation of today in which I advised you that John Broad Construction Company and Air Conditioning, Inc. desire that, until we notify you otherwise, your firm no longer offer for sale their property located at the Northeast intersection of West Fifteenth and Guadalupe Streets in Austin, Texas, the same fronting approximately 49 feet on West Fifteenth Street and 128 feet on Guadalupe Street.

"If the present plans of the owners with reference to the property are hereafter changed and they desire to relist the property with you, I shall advise you promptly.

"Sincerely yours,
Herman Jones /s/"

On March 15, 1949, Knight, who had been trying to sell the property to the Watermans for three or four days prior thereto, procured a contract of purchase and sale between the defendants and the Watermans for $105,000 and a commission was paid Mr. Knight.

■ We do not believe the court was in error in entering the judgment for plaintiffs as the plaintiffs were the procuring cause of the purchase of the property by the Watermans as a matter of law in view of the entire transaction, dealings and relations between the purchasers and the owners, and that the owners could not discharge plaintiffs in the manner they did so as to defeat the claim for commission.

But for the discharge of the plaintiffs four days prior to the making of the sales contract, thereby rendering it impossible for the plaintiffs to further carry on negotiations for the sale of the property the plaintiffs could have, without reasonable doubt, consummated the sale to the Watermans and have earned a commission as the procuring cause, as a matter of law, and no fact issue was presented.

It is undisputed that plaintiffs procured the Watermans as prospective purchasers of the property, who were ready, able and willing to purchase it, and all that was left undone was the details of closing as to the actual price and terms, but not materially different from those under ac-

278

tual consideration by the parties. The Watermans actually purchased the property on terms satisfactory to the owners with only some minor changes involving a second lien for $10,000. Mr. Knight, who was the loan broker in the negotiations from the beginning and who closed the sale, did not act independent of the plaintiffs.

In Goodwin v. Gunter, 109 Tex. 56, 60, 185 S.W. 295, 296, 195 S.W. 848, our Supreme Court held:

"The rule of law which governs the case is settled and plain, and its application presents no difficulty. It is a general doctrine that in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned. But the commissions are earned and the broker is entitled to their payment according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such a case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. That the owner, pending the broker's negotiation, may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced. It is no answer in such a case to say that a purchaser has not been produced by the broker, ready, able and willing to buy upon the terms limited by the contract, and the owner is therefore free to deal with the buyer, though produced by the broker, without any liability to the latter. That becomes unimportant in the face of the outstanding fact that it is by the broker the buyer is produced, and, before his negotiation is concluded, a sale is made, as the result of his effort, which is presumably just as satisfactory to the owner. The owner will therefore be deemed, in such a case, to have waived the terms to which the broker was confined, and the law declares him liable for the commissions fixed by the contract, for the reason that, except as to such waived provision, the broker's part of the contract has been fully performed. The decisions of this court clearly affirm this principle. It is recognized, generally, elsewhere; and nothing else could well be the law."

In the case of Philip A. Ryan Lumber Co. v. Conn., 20 S.W.2d 388, 394, dism., the Court of Civil Appeals held:

"We repeat that, in our opinion, the undisputed evidence in this case showed that, through the efforts of appellee, appellants' broker, the Boynton Lumber Company, became interested in the purchase of appellants' mill plant, and the evidence was sufficient to warrant the jury's finding in answer to one of the special issues that during the negotiations between appellee and appellant for the sale and purchase of the mill plant appellants themselves sold the property to the Boynton Lumber Company. This of itself showed, as a matter of law, that appellee was the procuring cause of the sale by appellants of their mill plant to the Boynton Lumber Company, and entitled him to the commission under the terms of his contract for his services as broker, which was,

as we have construed the contract, $3,000."

In Shook v. Parton, 211 S.W.2d 368, 372, the Court of Civil Appeals at Amarillo, held:

"The jury found that appellee was the procuring cause of the sale of the land and the evidence is amply sufficient to support such finding. It has been held that a real estate broker is entitled to a commission for effecting a sale, if he is the efficient cause of the sale by bringing the parties together by negotiations, although the sale is thereafter concluded by the owner himself. Spires v. Mann, Tex. Civ.App., 173 S.W.2d 200."

In Keener v. Cleveland, Tex.Com.App., 250 S.W. 151, 152, it was held:

"The rule is well established that, when a real estate broker is instrumental in bringing together the seller and a purchaser who is acceptable to him, and they consummate a sale and purchase of property on terms that are satisfactory to the seller, this constitutes the agent the procuring cause of the sale, and he is entitled to the commission agreed upon. * *

"[3] There is no difference where the seller, in prosecuting the negotiations himself, concludes the sale on different terms and for a less price; the rule being that the broker is entitled to his compensation according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale on terms satisfactory to himself, though for a less amount than that to which the broker was limited."

Briden v. Osborne, Tex.Civ.App., 184 S.W.2d 860.

We believe that the written matters consisting of the card listings and the letter from the attorney, all of which are herein set out, constitutes sufficient memoranda of the contract and identified the property with such certainty that it could be located by the data furnished in the writings themselves, and that the undisputed testimony of the surveyor who testi-

fied so shows as well as does all other testimony in the case.

The defendants contend that plaintiffs cannot recover in this case because it is a suit for a real estate dealer's commission, and is within the purview of Section 22 of the Real Estate Dealer's Act (Article 6573a, Vernon's Ann.Civ.Stats.). Particularly, they contend that the written contract is insufficient under the statute of frauds because it does not sufficiently identify the property.

Article 6573a, Section 22, Vernon's Ann.Civ.Stats., provides as follows:

"Sec. 22. No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereto lawfully authorized. * * *"

It is readily apparent that this provision is merely an enlargement of the statute of frauds (Art. 3995, Vernon's Ann.Civ. Stats.), and it has been uniformly held that the construction of the original statute should have great weight in consideration of the proper construction of the later enactment. Hancock v. Sosbee, Tex.Civ. App., 183 S.W.2d 284; Dunn v. Siemons, Tex.Civ.App., 165 S.W.2d 203.

It is well settled law in Texas, and elsewhere, that the writing required by the statute of frauds may be in any form whatsoever so long as it embodies the agreement of the parties and is signed by the person against whom liability is asserted. From the earliest decisions the Texas Supreme Court has held that it establishes simply a rule of evidence. Chief Justice Hemphill said of our statute of frauds:

"Now it has always been held, under statutes of similar import, in England and in the other states, that the written evidence required by the statute need not be comprised in a single document, or drawn up in any particular form. It is sufficient if the con-

tract can be plainly made out in all its terms from any writings of the party or from his correspondence; * *. *." Peters v. Phillips, 1857, 19 Tex. 70, 70 Am.Dec. 319.

■ It is not essential that all of the elements be embodied in a single writing, the cause of action being establishable without resort to parol evidence. Peacock v. Harrison, Tex.Civ.App., 189 S.W. 2d 500, error dism.; 2 Tex.Jur.Supp. 568, Sec. 26d.

■ All that is required is a writing of some kind signed by the party against whom liability is asserted, from which the terms of the contract can be made out. It is well settled that the contract need not be comprised of a single instrument, but may consist of two or more writings, which, when considered together, sufficiently evidence the contract. The writings may be in the form of letters, receipts, deeds or telegrams, and may be executed subsequent to the agreement sued on. The statute does not demand that the agreement itself be in writing; it demands a written memorandum which will evidence the parol agreement.

In the case of Shook v. Parton, supra, the Court said:

"This (the statute) means that there must be a promise to pay a commission, and that the tract of land to be sold must be identified by the writing. Volkmann v. Wortham, Tex.Civ.App., 189 S.W.2d 776. All the statute requires is written evidence from which the whole contract may be made out. The statute may be satisfied by letters passing between the parties that contain the terms of the offer and an acceptance, provided the letters are signed by the respective parties. (Citing cases.) It has been further held in such cases that the memorandum in writing may be made subsequent to the agreement made."

In the same case the Court in reference to the description under consideration said:

"The writing relied on must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land referred to, in the writing may be identified with reasonable certainty. Although the essential elements of the contract may never be supplied by parol, the details which explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol.".

■ Even if it be said that Mr. Knight acted independently in negotiating the sale and thereby became entitled to compensation for his services, this would not preclude appellees from recovering because the rule is that

"* * * where land is listed with more than one agent, one of whom begins negotiations with a prospective buyer, but concludes no binding agreement, and later another agent begins negotiations with the same buyer, who abandons the prior negotiations, and a sale results by reason of the efforts of the last agent, *if the seller maintains an attitude of neutrality,* there can be but one recovery, and the agent who actually concludes the sale is the one entitled to the compensation." (Emphasis added.) Keener v. Cleveland, Tex.Com.App., 250 S.W. 151, 153.

It is undisputed here that the owners did not remain neutral. They stepped in and wrongfully interfered with and prevented any further efforts on the part of appellee to complete the sale to the purchaser which they and they alone had produced.

We have given careful consideration to the record in this case and have been favored with well-prepared briefs and authorities therein referred to, which have been very helpful in deciding this case, but as we have herein stated, we believe the plaintiffs had an enforceable contract, with sufficient description of the property to meet the requirement of the statute in the card listings and the letter constituting a memorandum thereof, and that the plaintiffs were the procuring cause of the sale as a matter of law and are entitled to the commission. Therefore the judgment of the trial court is affirmed.

Affirmed.