H. G. WEST, Appellant,

v.

P. C. BARNES, Appellee.

No. 10899.

Court of Civil Appeals of Texas.

Austin.

Nov. 15, 1961.

Rehearing Denied Dec. 6, 1961.

**616**

Byrd & Davis, V. F. Taylor, Austin, for appellant.

F. L. Kuykendall, Austin, for appellee.

RICHARDS, Justice.

Suit was brought by H. G. West, appellant, in the District Court of Travis County, Texas, for compensation under a written contract executed by P. C. Barnes, appellee, on February 18, 1960, by the terms of which contract appellee granted appellant the sole and exclusive right, for a period of 180 days and thereafter until cancelled by registered mail, to act as his real estate broker to negotiate for a purchaser for certain real estate owned by appellee in Travis County, Texas. Before the expiration of the 180 day period on August 1, 1960, appellee sold the property to a purchaser not procured through the efforts of appellant. The contract provided that in case of sale of the property by appellee or anyone acting in his behalf during the life of the contract, appellee agreed to pay appellant a commission of not less than 5% of the sale price.

Appellant alleged that he had demanded payment of appellee for his commission in the amount of $5,177.00 in accordance with the terms of the contract, which appellee refused to pay. Appellant also alleged that he had been required to employ an attorney to collect the amount due him by appellee and therefore was entitled to recover a reasonable attorney's fee in the sum of $1,750.00 under Art. 2226, Vernon's Ann. Civ.St. Appellee answered by special exceptions, a plea in bar under Art. 3995, Sec. 4, V.C.S. and Art. 6573a, Sec. 28, V.C.S. and a general denial. On the trial of the cause before the Court without a jury judgment was entered that appellant take nothing, from which judgment this appeal was perfected. At the request of appellant the Trial Court made and filed findings of fact and conclusions of law.

Appellant's first three points of error are that the Trial Court erred (1) in failing to find and conclude as a matter of law that appellant's exclusive listing entitled him to recover his commission; (2) in concluding as a matter of law that the description of the land set out in the exclusive listing is so vague, indefinite and uncertain that it could not be enforced and (3) in concluding as a matter of law that the exclusive listing was not enforceable because it did not contain other essentials required to take it out of the statute of frauds.

The pertinent parts of the contract to be construed are as follows:

"Real Estate Listing Form

"H. H. West Company, Broker

"For and in consideration of your agreeing to list and your efforts to find a purchaser for my property hereinafter described, I do hereby give to you for a period of *180* days from this date, and thereafter until this agreement shall be cancelled by me in writing by registered mail, the sole and exclusive right and authority to negotiate a sale of my said property at the price and upon the terms hereinbelow set out.

*   *   *   *   *   *

"I further agree to pay to you as a commission for such services a sum equivalent to the difference between the sale price herein specified by me and the price at which you may procure a purchaser for said property within the time limit herein set out.

"Should I, or anyone acting for me, including my heirs, sell, lease, transfer,

or otherwise dispose of said real property within the time herein fixed for the continuance of the agency you shall be entitled nevertheless to your commission as herein set out, which shall be in no event less than 5% of the sale price, which I in such event agree to pay or direct to be paid.

\*　　\*　　\*　　\*　　\*　　\*

"Price I agree to take: Net to me *$940.00 per acre to be surveyed.*

"Terms: *29% Down Bal in ten years with an on or before privilege*

"Property: *approximated 100 acres* (Acres, and/or Lot No.)

"Located In: *Travis* County, Texas and being the same property conveyed to me by deed dated *Get record From Travis Court House* and recorded in Vol. *1605*, Page *477*, Travis County Deed Records.

"Owner: *P C Barnes*
"Located on Kramer Lane." [1]

In construing an exclusive agency contract similar in terms to the above contract, the Supreme Court of Texas in Neece v. A. A. A. Realty Company, 159 Tex. 403, 322 S.W.2d 597, 601, stated:

"Anyone of ordinary intelligence reading this agreement would know from its operative contractual clauses, \* \* \* that the right to sell granted the broker was sole and exclusive and that regardless of who sold the property prior to 180 days from date (or a written cancellation of the contract thereafter), the broker would be entitled to five per cent of the sales price."

It is undisputed that appellee read the listing agreement before he signed it, that he understood its contents and received a copy of the instrument. The written portions of the contract were supplied by appellant who was to get the date of the deed by which the property in question was conveyed to appellee from the records in the Travis County Court House in Vol. 1605, p. 477.

It was stipulated by the parties that as of February 18, 1960, appellee was the owner of 122.7 acres of the land described in Vol. 1605, pp. 477–480 of the Deed Records of Travis County, Texas, and that on or about August 1, 1960 appellee sold out of such tract of land on the basis of surveyed acres 121.82 acres to one Ben Newman for a consideration of $850.00 per acre or a total consideration of $103,547.00, appellee retaining the house in which he was living with the remaining acreage around it which was all of the land owned by him in the Applegate Survey as of February 18, 1960 and August 1, 1960.

Assuming that the listing agreement complied in all respects with the provisions of Sec. 28, Art. 6573a, V.C.S., there being no question of fraud in its execution, Indemnity Insurance Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, 556, appellant would be entitled to recover the compensation due him under the terms of the exclusive listing contract which had been breached by appellee by the sale to Ben Newman. A. A. A. Realty Co. v. Neece, Tex.Civ.App., 314 S.W.2d 384, 389, reversed on other grounds, Neece v. A. A. A. Realty Co., 159 Tex. 403, 322 S.W.2d 597; Lewis v. Smith, Tex.Civ.App., 198 S.W.2d 598, 600, error dism.; Simpson v. Mooney J. Sherman & Son Co., Tex.Civ. App., 223 S.W.2d 42, 44, no writ history; Holmes v. Holik, Tex.Civ.App., 238 S.W.2d 260, 262, error dism.

In order for appellant to recover his commission under an exclusive listing contract in accordance with the provisions of Sec. 28, Art. 6573a, V.C.S., it is necessary that the written contract shall contain a promise to pay a commission, specifying its amount or the basis for computing it, naming the person to whom the commission

---

1. The listing form is printed but the italicized words are in writing.

is payable, identifying the property to be sold and be signed by the promisor or his authorized agent. Since Sec. 28, Art. 6573a is substantially in the same phraseology as Art. 3995, V.C.S. (the statute of frauds), the established rules of law governing the statute of frauds must be applied in determining the description of the land and the written memorandum of agreement must contain within itself or by reference to some other existing writing the means or data by which the particular land can be identified with reasonable certainty. Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222.

Here it is undisputed that there is a promise in writing signed by appellee to pay appellant a commission on the basis of 5% of the sale price of the land described in the memorandum should appellee or anyone acting for him dispose of such property within 180 days from February 18, 1960 and thereafter until cancelled by registered mail by appellee.

The Trial Court found that "the description of the acreage listed * * * is not described in any manner in the written listing and does not refer to any other instruments where the boundaries or description of the approximately 100 acres can be found" and "that the designation of approximately 100 acres is wholly insufficient" and that the parties never agreed as to what approximately 100 acres would be carved out of the remaining acreage of the 145 acre tract claimed and owned by appellee. Based upon these findings of fact the Trial Court concluded, as a matter of law, that "the description of the approximately 100 acres set out in the contract of appellant and appellee is so vague, indefinite and uncertain that the contract cannot be enforced."

It will be noted that the contract in question refers to "my property hereinafter described * * * Net to me $940.00 per acre to be surveyed * * * Property: approximated 100 acres. Located in: Travis County, Texas, and being the same property conveyed to me by deed * * * recorded in Vol. 1605, page 477, Travis County Deed Records. * * * Owner: P. C. Barnes—Located on Kramer Lane."

The use in a contract of such words as "my property" when it is shown by extrinsic evidence that the party who signed the contract owns a tract and only one tract of land answering the description in the memorandum constitutes a description sufficient to comply with Sec. 28, Art. 6573a, V.C.S.; Pickett v. Bishop, supra. Here the memorandum specifically refers to "the same property conveyed to me by deed recorded in Vol. 1605, page 477, Travis County Deed Records." There is no question that the use of the words "my property" or "being the same property conveyed to me by deed recorded in Vol. 1605, page 477, Travis County Deed Records Owner: P. C. Barnes" meets the test more fully and completely than many other descriptions which have been held by the appellate courts of Texas to meet the standards required by the statute of frauds and Sec. 28, Art. 6573a, V.C.S.

The following descriptions have been held to comply fully with the statute of frauds not only in suits for real estate commissions but also in suits for specific performance: "A certain tract of land being my own headright, lying on Rush Creek in the Cross Timbers", Fulton v. Robinson, 55 Tex. 401; "* * * my place, known as the 'James Perry Tract of Land'," Morrison v. Dailey (Tex.Sup.) 6 S.W. 426, 427; "my interest in my lands in Lavaca County and also that in Uvalde County", Ragsdale v. Mays, 65 Tex. 255; "Old Wes Smith Ranch", Volkmann v. Wortham, Tex.Civ. App., 189 S.W.2d 776, 777 error dism.; "My ranch of 2200 acres", Jones v. Smith, Tex.Civ.App., 231 S.W.2d 1003, 1004, error ref. N.R.E.; Wilson v. Fisher, 144 Tex. 53, 188 S.W. 150, 153 and authorities cited therein.

But the Trial Court also found that the words "approximated 100 acres" were wholly insufficient as a designation of the acreage in question since the deed by which appellee acquired the title to the land in

question described a tract of 145 acres and that appellant and appellee never agreed as to what 100 acres would be carved out of the remaining acreage of the 145 acre tract described in the deed.

During the trial appellant testifying in his own behalf was asked on direct examination: "Was there any discussion between the two of you as to the amount of land you were listing?", which was objected to by appellee's counsel as being an attempt to enlarge or add to the description contained in the contract sued upon, which objection was sustained by the Court. However on cross examination by appellee's attorney appellant testified as follows:

"Q. Mr. West, you had examined Volume 1605, page 477 of the Travis County Deed Records prior to the time this February 18, 1960, contract was signed, had you not? A. Yes, sir, I had.

"Q. And you knew the description of the property called for 145 acres? A. Yes, sir.

"Q. When this contract was signed, Mr. Barnes told you that he had sold about 20 acres off the east end of it, didn't he? A. Yes, he stated that he had sold some of it, and the highway had taken some.

"Q. So you knew at the time this contract was signed that Mr. Barnes was claiming about one hundred and twenty-two or three acres, did you not? A. Well, he indicated he did not know exactly how many acres, and the contract was predicated upon it being surveyed when sold.

"Q. You knew originally there was 145 acres shown in that original tract? A. *It* did.

"Q. And he told you he had sold twenty acres of it, did he not? A. Yes.

"Q. And he told you that he had sold a little bit for highway purposes? A. Yes.

"Q. Did he tell you some two or three acres? A. No, sir.

"Q. You knew that he was claiming he had about 125 acres left in that tract, didn't you? A. He could not be specific. He did not know, because he emphasized the fact that he wanted it surveyed when sold, and to be sold by the surveyed acreage.

"Q. As a result of your conversation at the time this contract was signed, you presumed that Mr. Barnes was claiming to have about 125 acres in that tract, didn't you? A. Approximately.

"Q. He also told you, did he not, that he wanted to keep a few acres out of what he owned around the house for his own purposes? A. I believe Mr. Barnes made a statement that he did not want to include the house in it.

"Q. How much did he tell you that he wanted to keep out of what he owned? A. I don't recall that he made a specific statement.

"Q. Didn't he tell you that he wanted to keep four or five acres where the house was located? A. It is possible he said that, but I do not recall that he specified four or five acres.

"Q. You remember when your deposition was taken, don't you, on October 5th? A. Yes, I do.

"Q. In that deposition once you were asked this question, and didn't you make this answer, appearing at page 14 of your deposition:

"'Q Well, that was where the house was located, he was going to keep four or five acres there where he was living?'

"'A That's right.'

Didn't you answer that? A. I recall, since you have brought that out, Mr. Kuykendall, that he did say there was several acres with the house there, four

or five acres, and he did not want to sell that portion of it.

"Q. All right. Now, you filled in all these blanks in your own handwriting, did you? A. Yes, sir.

"Q. So when you filled in that blank, which says approximately 100 acres, you knew at that time Vol. 1605, page 477, of the Deed Records of Travis County called for 145 acres, didn't you? A. Yes, I did.

"Q. So that, as a result of this listing, Mr. Barnes was listing with you approximately 100 acres out of whatever he owned? A. He was listing with me the piece of property he had, but he did not know the specific number of acres, and it was subject to being surveyed when it was sold.

"Q. At the time the deposition was taken, didn't you testify that Mr. Barnes was listing with you approximately 100 acres of whatever he owned; didn't you so testify at the time the deposition was taken? A. Well, we wrote in a hundred acres or more, approximately, because we did not know the exact number of acres."

On re-direct examination appellant was asked the following question: "Now, Mr. West, Mr. Kuykendall was asking you about the approximately one hundred acres, which was written in, and, as I understand your answer, it was, that is correct, but based upon a survey, or to be surveyed. Was that your understanding with Mr. Barnes, that the tract at the time it was sold had to be surveyed to ascertain the correct acreage?", to which appellant answered "yes."

In answer to the following question: "Do I understand you from answering Mr. Kuykendall's questions that neither one of you knew exactly how many acres were contained in that tract?" appellant answered: "That's right."

In answer to the question: " * * * if you can tell me the answer, Mr. West,

the use of the term in that contract, 'to be surveyed,' what was the purpose, if you know, of the term there, to be surveyed?", appellant answered: "Because I don't think that the gentleman, Mr. Barnes, knew how many acres he had left, and he wanted to be paid so much per surveyed acre." Appellee did not take the stand as a witness in his own behalf.

In Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150, 152, the rule as to the introduction of parol testimony as extrinsic evidence for the construction of contracts governing the sale of real estate, is stated as follows:

"The certainty of the contract may be aided by parol only with certain limitations. The essential elements may never be supplied by parol. *The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol.* But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum." (Emphasis supplied.)

See also Shook v. Parton, Tex.Civ.App., 211 S.W.2d 368, 371, no writ history.

■ The testimony of appellant explaining the terms "to be surveyed" and "approximated 100 acres" was elicited by appellee's counsel upon cross examination and therefore appellee is not in a position to question its admissibility. The testimony did not attempt in any way to alter or change the terms of the written contract but merely explained and clarified the essential terms appearing therein so as to identify the description of the tract to be sold with reasonable certainty from the data contained in the memorandum.

Considering the description of the land in the written memorandum as explained and clarified by the uncontradicted testimony of appellant, the only conclusion which may be drawn is that appellee gave to appellant the sole and exclusive right for a period of 180 days to act as his broker to negotiate for a purchaser for all of that portion of the 145 acre tract of land as shown in the deed to appellee, as recorded in the Deed Records of Travis County, Texas, which appellee owned on February 18, 1960.

The Trial Court's finding that the description of the acreage was not described in any manner in the written listing by reference to any other instruments where the boundaries or description of the approximated 100 acres could be found and that the parties never agreed as to what approximately 100 acres would be carved out of the remaining acreage is without evidentiary basis in the record and must be disregarded. The description of the property contained in the written memorandum is sufficiently definite and certain to comply with the provisions of Sec. 28, Art. 6573a, V.C.S., as construed by the courts of this State according to the authorities hereinbefore cited and therefore the conclusion of law by the Trial Court that the description of the property is so vague, indefinite and uncertain that the contract cannot be enforced is erroneous.

The Trial Court also concluded that the contract is not enforceable for the reason that it does not contain certain other essentials which are required to constitute an enforceable contract so as to take the case out of the statute of frauds, such essentials being the rate of interest, time and amount of payments, whether the note is to be secured by a lien and when the interest is to be paid and that since those essentials were to be agreed upon in the future between appellee and a purchaser the agreement was unenforceable.

The terms of the consideration stated in the written agreement are based upon a purchase price of $940.00 per acre for each surveyed acre owned by appellee on February 18, 1960, out of the 145 acre tract of land, of which amount 29% was to be paid in cash and the balance in 10 years with an "on or before privilege." No rate of interest on the unpaid balance of the purchase price due in 10 years is stated in the agreement. In the absence of qualifying or explanatory words any person of average intelligence could reach the conclusion that the unpaid balance was to be payable by a note which would be secured by a vendor's lien upon the land so sold, the note to be due and payable in 10 years from the date of the sale, which note was to contain a stipulation that the entire principal or any part thereof at the option of the maker could be paid at any time on or before its maturity date.

Appellee cites several cases in support of the Trial Court's conclusion of law that the failure to specify the rate of interest in the contract would render it unenforceable. All of these cases involved suits for specific performance, except Hume v. Bogle, Tex.Civ.App., 204 S.W. p. 673, no writ history which was a suit for a broker's commission based upon a verbal contract. The Court held that since the material terms thereof were left for future adjustment the contract was not a completed contract and could not be specifically enforced.

It is a well settled rule of law that a greater degree of certainty is required in the terms of a contract which is to be specifically enforced in equity than is necessary in a contract which is made the basis of an action at law for damages for its breach. Bryant v. Clark, Tex.Civ.App., 347 S.W.2d 635, 636, error ref. N.R.E.

In Simpson v. Mooney J. Sherman & Son Co., Tex.Civ.App., 223 S.W.2d 42, 43, no writ history, a card listing which failed to give the price and terms on its reverse side was attacked as being too uncertain and indefinite to be enforceable. On the reverse side of the card there were many

spaces for answers to be written in, none of which were filled, but it did contain in the printed part of the card the phrase "or at such price and on such terms as the undersigned may agree to accept therefor." Since the contract gave the broker an exclusive right to sell the property so described for a period of 6 months at such price and on such terms as the owner agreed to accept and the sale of the property was made direct by the owner without the aid of a broker, the broker was entitled to recover his commission.

In Bohls v. Brazelton, Tex.Civ.App., 336 S.W.2d 208, error ref. N.R.E., after describing the property the card listed the sale price at $36,500.00, loan $25,000.00, but the interest and length of loan blanks were not filled in. The Court held that the card as a whole constituted an agreement to pay the broker a commission in compliance with Sec. 28, Art. 6573a, V.C.S. See also Shook v. Parton, supra.

But even if the present action was for specific performance where a greater duty of certainty is required, the Supreme Court of Texas in Colvin v. Blanchard, 101 Tex. 231, 106 S.W. 323, 324, held that a letter in which it was stated that "I will sell the lots for $19,000 and pay you 5% com. plus $50, or $1,000 com. in all, for making the sale. In other words, I want $18,000 net for my lots. Terms, $3,000 cash, bal. long time." prescribed the terms on which the sale should be made, that is $3,000.00 in cash and the remainder on long-time notes.

■ Although the contract failed to state the rate of interest on the unpaid balance, the legal rate of 6% interest per annum could probably be supplied as a matter of law. The Trial Court's conclusion that the contract was unenforceable because lacking in certain so-called essentials requisite for the enforcement of an action for specific performance of a contract for the sale of land is erroneous. Since this is an action for breach of a contract to pay a real estate commission which fully complies with the provisions of Sec.

28, Art. 6573a, V.C.S., the absence of the so-called essentials would not render the contract unenforceable.

Appellant's first three points of error are sustained. We therefore hold that the exclusive listing agreement between appellant and appellee dated February 18, 1960, constitutes a valid, legal and binding memorandum which complies fully with the requirements of Sec. 28, Art. 6573a, V.C.S., and that appellant is entitled to recover from appellee his commission at the rate of 5% of the price for which appellee sold the property in question to Ben Newman on August 1, 1960.

■ Appellant's fourth point of error is that the Trial Court erred in concluding as a matter of law that appellant was not entitled to recover an attorney's fee under Art. 2226, V.C.S. for his personal services rendered.

Art. 2226 is in part as follows:

"Any person having a valid claim against a person * * * for personal services rendered, * * * may present the same to such person * * * and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person * * * he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

Appellant's cause of action was based upon a recovery for breach of a contract and not for personal services rendered. Since it is undisputed that appellant rendered no services in procuring the sale of the land by appellee to Ben Newman and that appellant's claim is based solely upon the contract, no attorney's fees are recoverable under Art. 2226, V.C.S., Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75, 77; Langdeau, Receiver v. Bouknight, Tex.,

344 S.W.2d 435, 441. Appellant's ·fourth point of error is overruled.

The judgment of the Trial Court is reversed and judgment is here rendered that H. G. West recover from P. C. Barnes his commission in the sum of $5,177.00, together with interest at the rate of six per cent (6%) per annum from August 1, 1960, and that all costs of suit are taxed against appellee.

Reversed and rendered.